640 A.2d 788

IN THE MATTER OF THE ARBITRATION BETWEEN: TRETINA
    PRINTING, INC., AND HI-TECH PROPERTIES, A GENERAL
    PARTNERSHIP, AND JAN TRETINA AND OLGA TRETINA,
    INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. FITZ-
    PATRICK & ASSOCIATES, INC., DEFENDANT-RESPONDENT.

FITZPATRICK & ASSOCIATES, INC., PLAINTIFF-RESPONDENT,
    v. TRETINA PRINTING CO., INC., HI-TECH PROPERTIES, A
    GENERAL PARTNERSHIP, AND JAN TRETINA AND OLGA
    TRETINA, INDIVIDUALLY, DEFENDANTS-APPELLANTS.

Argued October 12, 1993—Decided May 4, 1994.

*George Foster Mackey* argued the cause, for appellants (*Mackey & Moore*, attorneys, *Mr. Mackey* and *Gary J. Mueller*, of counsel).

*Robert Hedinger* argued the cause, for respondent (*Peckar & Abramson*, attorneys, *Mr. Hedinger* and *Caroline M. Rossi*, on the brief).

PER CURIAM.

This appeal and cross-appeal arise out of an arbitrator's award in a construction-management-contract dispute. The Chancery Division modified and confirmed the award. The Appellate Divi-

sion reversed and vacated the award. *In re Arbitration Between Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.,* 262 *N.J.Super.* 45, 55, 619 *A.*2d 1037 (1993). We granted certification, 133 *N.J.* 442, 627 *A.*2d 1147 (1993), and now reverse the judgment of the Appellate Division and reinstate the arbitrator's award. Moreover, the Court adopts as a rule governing judicial review of private-contract arbitration awards the standard set forth in the Chief Justice's concurring opinion in *Perini v. Greate Bay Hotel & Casino, Inc.,* 129 *N.J.* 479, 610 *A.*2d 364 (1992).

I

Fitzpatrick & Associates, Inc. (Fitzpatrick) entered into a contract with Tretina Printing Corporation (Tretina) for the design and construction of a printing plant and office building. The parties agreed to a "guaranteed maximum price" (GMP) of $2,566,050, which reflected a guarantee by Fitzpatrick that the total cost of the project, including any corrective work and a construction-management fee, would not exceed that sum. The contract provided that Tretina would pay Fitzpatrick a $200,000 construction-manager's fee (provided that Fitzpatrick did not breach the contract) as part of the total cost. If the cost of the completed project exceeded the GMP, Fitzpatrick would absorb those costs itself. If the total cost turned out to be less than the GMP, then Tretina would turn over to Fitzpatrick thirty percent of the savings as well as the construction-management fee.

In addition, the contract contained a provision for "retainage," under which Tretina was entitled to withhold payment to Fitzpatrick of a sum equal to 150% of the estimated cost of completing any unfinished or unsatisfactory work. On completion of that work, Tretina would become obligated to pay Fitzpatrick the amount it had retained to cover the potential cost. Lastly, the contract specifically provided that "all claims, disputes, and other matters * * * arising out of, or relating to, this Agreement or the breach thereof * * * shall be decided by arbitration" and that the arbitrator's decision "shall be final * * *."

When Tretina failed to pay one of Fitzpatrick's requisitions, Fitzpatrick filed a claim for arbitration; Tretina cross-claimed because of Fitzpatrick's allegedly deficient and incomplete work in several areas of the construction. By that time, Tretina had paid Fitzpatrick $2,119,819. Thus, under the contract terms, at the time that the parties began arbitration, Tretina was liable for up to $446,231 of all of the remaining construction costs, including the cost of corrective work and Fitzpatrick's construction-management fee of $200,000.

The arbitrator, appointed by the American Arbitration Association, conducted twenty-two arbitration sessions over a one-year period, heard twenty-one witnesses, and reviewed 222 exhibits before issuing his written award. The award contained two lists consisting of Fitzpatrick's claims and Tretina's claims. Next to each item on the list the arbitrator either assigned a dollar amount, directed Fitzpatrick to complete or to pay for the cost of completing the claimed deficiency, or denied the claim. The "TOTAL AWARD TO FITZPATRICK" was $269,912.34 and the "TOTAL AWARD TO TRETINA" was $520,180.00, leaving a "TOTAL NET AWARD TO TRETINA" of $260,267.66.

Tretina moved for an order confirming the award and Fitzpatrick moved for an order vacating or modifying it. In a written decision, the Chancery Division modified the award and confirmed it as modified. Although the trial court made a few minor changes, it deferred to the arbitrator's judgment on all but one issue, namely, retainage. The arbitrator had listed Fitzpatrick's fourth claim as:

4.  Retainage
    Construction management fee    $100,000.00
    (interest at 10% for 33 months)    27,500.00

    TOTAL    $127,500.00

As the trial court observed, the construction-management fee is entirely different from retainage. In addition, the court explained that retainage was not a separate claim; rather, it was a fund held by Tretina, who was required to pay it to Fitzpatrick "only if

[Fitzpatrick] did not breach its contract and only to the extent that approved work did not require repair or redoing." Thus, according to the court, after the arbitrator calculated the damages that Fitzpatrick owed Tretina, he should have treated the retainage as a credit against those damages because Tretina has never paid over the retained money. The court reasoned that the arbitrator had either overlooked the retainage claim or had assumed that Tretina's award would be offset by the retainage amount to which Fitzpatrick was entitled. Thus, after reducing somewhat the arbitrator's net award to Tretina, the trial court reduced that award by $201,148, the "accumulated retainage" claimed by Fitzpatrick, bringing Tretina's net award down to $61,369.66.

Tretina appealed to the Appellate Division, claiming that the trial court had mistakenly exercised its discretion in modifying the award and in not requiring the arbitrator to clarify his award. Fitzpatrick cross-appealed, arguing that the award was so defective that the Chancery Division should have vacated it. The Appellate Division, after conducting a detailed analysis of the contract and of the arbitration proceedings, concluded that of the two judicial remedies, modification or vacation of the award, provided by the Arbitration Act, *N.J.S.A.* 2A:24–1 to –11 (the Act), modification was not available because "the award ignores the basic contours of the parties' contract, decides some submitted disputes contrary to the evidence, and completely fails to decide others." 262 *N.J.Super.* at 52–53, 619 *A.*2d 1037. The court therefore vacated the award. *Id.* at 53, 619 *A.*2d 1037. In reaching that decision the Appellate Division relied on *Perini, supra,* 129 *N.J.* 479, 610 A.2d 364, and on *N.J.S.A.* 2A:24–8.

## II

The Act provides that once an arbitrator issues an award, any party to the arbitration may seek confirmation of that award in the Superior Court within three months of the arbitrator's deci-

sion. *N.J.S.A.* 2A:24–7. If the trial court does not confirm the award, it can either vacate the award, *N.J.S.A.* 2A:24–8, or modify or correct it. *N.J.S.A.* 2A:24–9. However, the statute narrowly defines the circumstances under which a court may resort to those remedies.

Under the Act a court shall vacate an arbitration award:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

[*N.J.S.A.* 2A:24–8.]

The Act also provides that a court shall modify or correct an award:

a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;

b. Where the arbitrators awarded upon a matter not submitted to them unless it affects the merits of the decision upon the matter submitted; and

c. Where the award is imperfect in a matter of form not affecting the merits of the controversy.

The court shall modify and correct the award, to effect the intent thereof and promote justice between the parties.

[*N.J.S.A.* 2A:24–9.]

The Chancery Division confirmed and modified this arbitrator's award on the strength of *N.J.S.A.* 2A:24–9c, which requires a reviewing court to modify or correct an award that is "imperfect in a matter of form not affecting the merits of the controversy." In reversing, the Appellate Division relied on *N.J.S.A.* 2A:24–8a and d, under which a court must vacate any award that has been procured by "corruption, fraud, or undue means," or in which the

arbitrator "so exceeded or imperfectly executed [his] powers" that his award on the matter submitted was not "mutual, final, and definite."

In this Court the litigants, as did the Appellate Division, perceive the essential question to be the extent to which, and the standard under which, an arbitrator's award can tolerate judicial review. The Appellate Division vacated the award under what it termed "the *Perini* standard," see 262 *N.J.Super.* at 49, 619 *A.*2d 1037, and the parties' arguments revolve around whether that "standard," which today we reject, has been met in this case.

*Perini* involved a contract dispute between Perini Corporation as construction manager and Greate Bay Hotel & Casino as owner. Perini contended that the arbitrators had failed to observe "settled principles of contract law" in the calculation of the owner's lost profits from its hotel and casino business. 129 *N.J.* at 484, 610 *A.*2d 364. Perini alleged that the arbitrators had erred by including delay damages in the owner's award. It argued that the damages had not been contemplated by the parties, that they included lost profits based on delays that had been experienced after substantial completion of the project, and that the damages were speculative and disproportionate. *Id.* at 488–89, 610 *A.*2d 364. It urged that those mistakes of law constituted a sufficient basis on which to vacate the award. *Id.* at 484, 610 *A.*2d 364. Although the plurality opinion acknowledged the persuasiveness of Perini's arguments, it nevertheless concluded that the arbitrators' calculation of the award could find a basis in the evidence. *Id.* at 500, 509, 509–10, 515, 517, 610 *A.*2d 364. Even though the plurality members were troubled by the magnitude of the award, they were satisfied that the arbitrators had not manifestly disregarded any undebatable principle of law, and thus they upheld the award. *Id.* at 517–18, 610 *A.*2d 364.

In reviewing the narrow circumstances in which a court can vacate an arbitration award, the *Perini* plurality concluded that the "undue means" and "exceeded their powers" provisions of the statute embraced egregious mistakes of law; thus, a court could

vacate an arbitrator's award on that basis. *Id.* at 496, 610 *A.*2d 364. The plurality members emphasized, however, that they did not intend "that the arbitrators be judges or that their decisions be subject to the same appellate supervision as those of judges." *Id.* at 493, 610 *A.*2d 364. Rather, the scope of judicial review should be limited. "Thus, in private-sector arbitration an arbitrator's determination of a legal issue should be sustained as long as the determination is reasonably debatable." *Ibid.* The plurality opinion concluded that the purpose of a court's review is to guard against arbitrator errors that on their face are undebatable, unmistakable, gross, or in manifest disregard of the applicable law. *Id.* at 496, 610 *A.*2d 364. Thus, the plurality in *Perini* would allow a court to vacate an award when an arbitrator makes a mistake in respect of an undebatable point of law. The plurality opinion articulated the appropriate standard of judicial review as follows:

> Whether the arbitrators are viewed as having acted with "undue means" or having "exceeded their powers," the judicial inquiry must go beyond a search for mere mistakes of law. Were we to decide otherwise, arbitration would simply become another form of private non-jury trial. A scope of review that allows an arbitration decision to stand when the interpretation of law is reasonably debatable is consistent with the earlier formulation set forth in *Held [v. Comfort Bus Line,* 136 *N.J.L.* 640 [57 *A.*2d 20] (Sup.Ct.1948) ]. That formulation requires that the arbitrators must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award. In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.
>
> [129 *N.J.* at 494, 610 *A.*2d 364.]

The Chief Justice, concurring in the judgment in *Perini,* would have even further restricted the courts' role in reviewing voluntary private-sector arbitration awards. *Id.* at 519, 610 *A.*2d 364 (Wilentz, C.J., concurring). His concurring opinion argued that "[a]rbitration awards should be what they were always intended to be: final, not subject to judicial review absent fraud, corruption, or similar wrongdoing on the part of the arbitrators." *Ibid.* Thus in most cases the Chief Justice would not vacate an award even though it might be based on a mistake of law. The concurrence

urged that the statute, *N.J.S.A.* 2A:24-8, reflected that interpretation of the law, *id.* at 540, 610 *A.*2d 364, and that the Court should overturn precedent that was inconsistent with the rule that the Chief Justice advocated. *Id.* at 519, 610 *A.*2d 364.

Finally, the dissenters in *Perini* agreed with the plurality's standard but disagreed with the result that should be reached by applying that standard to the parties' claims. See *id.* at 549-56, 610 *A.*2d 364 (Stein, J., concurring in part and dissenting in part).

■ Therefore, although a majority of those who sat in *Perini* agreed on the controlling standard, they could not agree on its application to the circumstances of that case. In this case as well we do not achieve unanimity in respect of the correct standard of review or in the result; but a majority of the Court now agrees that the correct standard of review is not that adopted by five members who sat in *Perini* (Justices Clifford, Handler, O'Hern, and Stein, and Judge Keefe, temporarily assigned), but rather the standard set forth in the Chief Justice's opinion concurring in the judgment in *Perini*, in which Judge Arnold Stein, temporarily assigned, joined. That standard is as follows:

> Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. . [They] can be corrected or modified only for very specifically defined mistakes as set forth in [*N.J.S.A.* 2A:24-9]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award. For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that. I doubt if many will. And if they do, they should abandon arbitration and go directly to the law courts.

> [129 *N.J.* at 548-49, 610 *A.*2d 364.]

■ Because the record before us contains not even a hint of misconduct by the arbitrator, and because no statutory ground exists for invalidating or modifying the award, we uphold the arbitrator's award. In doing so, we need not confront the parties'

arguments that focus on *Perini*'s plurality opinion, given our rejection of the standard announced therein. Nor need we rehash the extensive treatment that the pertinent authorities were given in the contesting opinions in *Perini*, for we cannot improve on the arguments included therein. Three members now join the Chief Justice in the views expressed in his *Perini* concurrence, which therefore requires reinstatement of the arbitrator's award. We announce our adoption of the new standard governing review of arbitration awards so that parties who resort to private-party arbitration may be guided accordingly, not because the outcome in this appeal turns on which standard we apply. It does not. We are satisfied that under either standard the result would be the same.

## III

Which brings us to the dissent. A decent respect for our dissenting colleague's thoughtful opinion, which would lead to a *remand to the arbitrator for clarification* (a result both parties resisted at oral argument before us), impels us to explicate our differing view in some detail.

■ The dissent's reliance on *N.J.S.A.* 2A:24-9 as a basis for a remand is misplaced. That section of the Act requires a court to modify or correct an arbitration award in only three types of cases. Subsection a, on which the dissent relies, covers cases in which the award contains "an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein." The clear purpose of that section is to enable the court to correct simple arithmetical errors, such as 2 + 2 = 5, or obvious mistakes in identification, such as 14 Hill Street instead of 41 Hill Street. See, *e.g., Creter v. Davies,* 30 *N.J.Super.* 60, 62, 103 *A.*2d 392 (Ch.Div.) (applying *N.J.S.A.* 2A:24-9a to correct arithmetical error on face of award), *aff'd,* 31 *N.J.Super.* 402, 107 *A.*2d 17 (App.Div.1954).

■ The dissent argues that the arbitration award in this case is ambiguous. *Post* at 373, 640 *A*.2d at 801. We agree. The perceived ambiguity in the award arises from the arbitrator's allocation of the retainage sum allegedly due Fitzpatrick. Our dissenting colleague suggests that the retainage issue presents an "evident miscalculation of figures" requiring judicial action. Yet as the dissent explains, the arbitrator did not make a simple mistake in his addition or subtraction; rather the contention is that he omitted entirely one of the party's claims. Although we cannot determine from the face of the award whether the arbitrator erred in his dealing with the retainage, we are confident that any such error does not constitute a mere "miscalculation" and is by no means "evident." We refuse to shoehorn this case into a category in which it clearly does not fit simply because we discern either an absence of specificity in the arbitrator's analysis or an ambiguity in the arbitrator's treatment of that claim.

Moreover, *N.J.S.A.* 2A:24–9 directs a court to correct errors; it does not provide for a remand to the arbitrator. In addition, both *N.J.S.A.* 2A:24–9b and –9c direct a court to modify an award only if those changes will not affect the merits of the controversy. The clear implication from *N.J.S.A.* 2A:24–9 is that the Legislature intended that courts correct mistakes that are obvious and simple—errors that can be fixed without a remand and without the services of an experienced arbitrator. Thus, even if the alleged error in this case did constitute an "evident miscalculation," the proper action for the court would be to correct it, not to remand to the arbitrator. Because we conclude that *N.J.S.A.* 2A:24–9 is inapplicable to this case, we find no statutory basis for a remand.

■ Beyond that, we disagree as well with the dissent's contention that the power of courts to resubmit ambiguous awards to arbitrators for clarification is "well-settled." *Post* at 371, 640 *A*.2d at 799. On the contrary, in the absence of a statutory provision or an authorization in the arbitration agreement, a court that is asked to vacate, modify, or confirm an award usually has no power, except by the consent of the parties, to recommit the

matter to the arbitrator. *Held v. Comfort Bus Lines, Inc.*, 136 *N.J.L.* 640, 57 *A.*2d 20 (Sup.Ct.1948). Resubmission is foreclosed because with the rendering of an award, an arbitrator exhausts his or her commission. *Id.* at 641, 57 *A.*2d 20. In fact, our research discloses only one case in which a court relied exclusively on its inherent power to resubmit an ambiguous award to the arbitrator, *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 *F.*2d 569 (3d Cir.1967), and that case is readily distinguishable from the one before us.

*La Vale Plaza*, on which the dissent primarily relies, concerned a construction-contract arbitration award that left uncertainty about how the arbitrator had dealt with an outstanding balance owed to one party. Although the Third Circuit decided that the common law and not the Pennsylvania arbitration statute governed the case, it noted that the arbitration statute explicitly authorized a court to modify *or resubmit* an award to the arbitrator for clarification. 378 *F.*2d at 570–72. In determining that the court had the power under the common law to resubmit the question of the outstanding balance to the arbitrator, the court relied on the Pennsylvania statute's clear expression of public policy favoring resubmission of awards. *Id.* at 573–74.

We differentiate *La Vale Plaza* from our case on two bases. First, this case, unlike *La Vale Plaza*, involves statutory arbitration, not common-law arbitration. The parties moved to confirm the award in court under *N.J.S.A.* 2A:24–7, and the record shows that the parties and the court assumed that *N.J.S.A.* 2A:24–8 and –9 controlled the proceedings. Therefore, we review this arbitration under the arbitration statute, which does not authorize resubmission, and not under some other set of principles. Second, the New Jersey statute does not reflect a public-policy determination similar to Pennsylvania's. In fact, our Act suggests a contrary policy favoring finality and limited judicial involvement. Because the New Jersey arbitration statute governs this case, the Third Circuit's reasoning in *La Vale Plaza* to justify resubmission is inapplicable.

Nor are the federal labor-law cases persuasive authority here. As did the Illinois Supreme Court in *Rauh v. Rockford Products Corp.*, 143 *Ill.*2d 377, 158 *Ill.Dec.* 523, 574 *N.E.*2d 636 (1991), we decline to follow those cases on review of a commercial arbitration award. *Id.* at 390, 158 *Ill.Dec.* at 530, 574 *N.E.*2d at 643. The Illinois court looked instead to the Illinois Uniform Arbitration Act, which specifies the grounds for vacating or modifying an award. *Ibid.*

Moreover, the federal labor-law cases address the federal courts' authority under § 301 of the Labor–Management Relations Act, 29 *U.S.C.A.* § 185, to enforce collective-bargaining agreements that contain arbitration clauses. The United States Supreme Court has interpreted that section as conferring on the federal courts broad latitude for fashioning a body of substantive law from the policy of the national labor laws. *United States v. American Mfg. Co.*, 363 *U.S.* 564, 567–68, 80 *S.Ct.* 1343, 1346, 4 *L.Ed.*2d 1403, 1406–07 (1960); *Textile Workers Union v. Lincoln Mills*, 353 *U.S.* 448, 456–57, 77 *S.Ct.* 912, 918, 1 *L.Ed.*2d 972, 980–81 (1957). The fundamental goal of those labor laws is to curtail industrial strife and work stoppages through the arbitration of grievances. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 *U.S.* 574, 577–78, 585, 80 *S.Ct.* 1347, 1350–51, 1354, 4 *L.Ed.*2d 1409, 1414–15, 1419 (1960); *Textile Workers Union, supra*, 353 *U.S.* at 454–55, 77 *S.Ct.* at 917, 1 *L.Ed.*2d at 979.

Arbitration in the context of a labor dispute differs from private-contract arbitration in important ways. Parties enter commercial contracts voluntarily. They act without any compulsion to deal with each other instead of with some other party. The arbitration clause in their contracts represents a way to settle disputes informally should any arise. In a labor agreement, however, the parties must deal with each other. They have no choice. In that circumstance the agreement to arbitrate is vital to keeping the relationship between the parties afloat and guided by a set of agreed-to rules. *Warrior & Gulf Navigation, supra*, 363 *U.S.* at 580, 80 *S.Ct.* at 1351–52, 4 *L.Ed.*2d at 1416. In a commercial contract, arbitration is produced by a breakdown in

the parties' agreement. The parties use it as a last resort. In the labor arena, arbitration serves as the machinery under a collective-bargaining agreement that is "at the very heart of the system of industrial self-government." *Id.* at 584, 80 *S.Ct.* at 1352, 4 *L.Ed.*2d at 1416. Accordingly, the decisions of the federal courts reflect a strong preference for settling all aspects of labor disputes through the arbitration process. *American Mfg., supra,* 363 *U.S.* at 568–69, 80 *S.Ct.* at 1346–47, 4 *L.Ed.*2d at 1407; *Warrior & Gulf Navigation, supra,* 363 *U.S.* at 582, 585, 80 *S.Ct.* at 1353, 1354, 4 *L.Ed.*2d at 1417, 1419; *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 *U.S.* 593, 595–99, 80 *S.Ct.* 1358, 1360–62, 4 *L.Ed.*2d 1424, 1427–29 (1960); *Textile Workers Union, supra,* 353 *U.S.* at 455, 77 *S.Ct.* at 454–55, 1 *L.Ed.*2d at 979. Therefore, if a union and management cannot agree on the scope of an arbitration award or on the method of enforcing the award, courts, seeking to defer to the arbitration process, may resubmit the issue to the arbitrator for clarification. Resubmission is based not on any explicit provision in a federal statute but rather on the underlying policy of advancing industrial peace. J.A. Bryant, Annotation, *Comment Note.—Power of Court to Resubmit Matter to Arbitrators for Correction or Clarification, Because of Ambiguity or Error in, or Omission from, Arbitration Award,* 37 *A.L.R.*3d 200, 220 (1971).

We acknowledge that in limited circumstances a court can remand to an arbitrator for reconsideration or clarification. For example, in *Jersey City Police Officers Benevolent Ass'n v. City of Jersey City,* 257 *N.J.Super.* 6, 607 *A.*2d 1314 (1992), the Appellate Division properly directed the trial court to resubmit one issue to the arbitrator where it "had been neither submitted to nor decided by the arbitrator" in the initial proceedings. *Id.* at 11, 607 *A.*2d 1314. The arbitrator had not exercised his powers relating to that issue, so his authority had never expired. Likewise, if the obligations under an award are unclear to the parties, a court may resubmit the question to the arbitrator for clarification. The purpose of those types of resubmissions is to allow the arbitrator to settle all the issues without judicial encroachment on the

arbitration process, not to explain how the arbitrator arrived at the conclusions contained in the award.

In the case before us, however, the arbitrator has settled all the disputed issues. We may remain uncertain about the analysis that led to the stated result on one discrete issue, the retainage question; but asking an arbitrator to explain his or her reasoning works against the very goals of arbitration: finality and expedition. Remands for reconsideration or further explanation threaten the reliability of arbitration awards. Moreover, requiring an arbitrator to justify a decision reflects a lack of faith in the arbitration process and is inconsistent with our commitment to maintaining arbitration as an alternative to litigation in the courts.

In this case, the parties' obligations could not be clearer: one owes the other a sum of money. No one contends that the arbitrator never considered retainage. The parties presented evidence on that issue and the award has a retainage section. We conclude that an ambiguity in how the arbitrator calculated one part of a multi-claim, complex contract dispute provides no basis for resubmitting the award to the arbitrator for clarification.

## IV

Finally, and but distantly related to the foregoing discussion, we add our recognition that in rare circumstances a court may vacate an arbitration award for public-policy reasons. For example, in *Faherty v. Faherty,* 97 *N.J.* 99, 477 *A.*2d 1257 (1984), we held that "whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award." *Id.* at 109, 477 *A.*2d 1257. That heightened judicial scrutiny is required because of the courts' traditional role as *parens patria. Id.* at 111, 477 *A.*2d 1257. Similarly, in a public-sector arbitration setting, a court can properly vacate an award because of a mistake of law. *Communications Workers v. Monmouth County Bd. of Social Servs.,* 96 *N.J.* 442, 476 *A.*2d 777 (1984). That exception is

necessary because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the public interest and welfare, issue a decision in accordance with the law. *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 217, 405 *A.*2d 393 (1979).

Additionally, in *Faherty, supra,* we concluded that a combination of public-policy reasons and a mistake of law warranted judicial vacation of the arbitration award. We vacated a portion of the arbitration award because it granted one spouse alimony after she had remarried, and because, unlike the contract in this case, the parties in *Faherty* had agreed that the arbitrator would decide legal issues in accordance with New Jersey law. 97 *N.J.* at 112, 477 *A.*2d 1257. Because the alimony allowance in *Faherty* represented a fundamental error of New Jersey law, the court properly vacated that portion of the award.

### V

The judgment of the Appellate Division is reversed. The cause is remanded to the Chancery Division for entry there of a judgment confirming the arbitration award in all respects.

CLIFFORD, J., concurring.

In *Perini Corp. v. Greate Bay Hotel & Casino, Inc.,* 129 *N.J.* 479, 610 *A.*2d 364 (1992), I voted with the plurality opinion and agreed with a majority of the members on the standard of judicial review that courts should apply to private-contract arbitration awards. Today I provide the fourth vote for the quite different test set forth in the Chief Justice's opinion concurring in the judgment in that case, *id.* at 518–49, 610 *A.*2d 364, having succumbed to the persuasive force of that opinion. Unlike me, the others in today's majority have no explaining to do, being either already on record as favoring the *Perini* concurrence (the Chief Justice) or not hitherto committed to any position on the subject (Justices Pollock and Garibaldi) because they did not participate in the *Perini* deliberations or decision. Although this new alignment

of the Court on the *Perini* issue does not affect the result of this appeal—nor would it have produced a different result in *Perini*—I have emerged from the closet only so that those who count heads can keep an accurate score and be guided henceforth accordingly.

Given the tenuous nature of *Perini* as precedent, I prefer to view my defection more as a demi-pirouette—not particularly graceful or elegant, I admit, but something less than a full-fledged about-face. As the majority opinion today points out, this Court was sharply divided in *Perini*, three members of the Court as then constituted adopting one rule of judicial review; two members agreeing with the judgment confirming the arbitration award but applying a much stricter standard of review, see 129 *N.J.* at 518–49, 610 *A.*2d 364 (Wilentz, C.J., concurring in judgment); and two members apparently agreeing with the plurality's standard but disagreeing with the result that application of that standard should have produced, see *id.* at 549–56, 610 *A.*2d 364 (Stein, J., concurring in part and dissenting in part).

The general rule is that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority of the members], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds * * *.' " *Marks v. United States,* 430 *U.S.* 188, 193, 97 *S.Ct.* 990, 993, 51 *L.Ed.*2d 260, 266 (1977) (quoting *Gregg v. Georgia,* 428 *U.S.* 153, 169 n. 15, 96 *S.Ct.* 2909, 2923 n. 15, 49 *L.Ed.*2d 859, 872 n. 15 (1976)); *cf.* Mark A. Thurman, Note, *When The Court Divides: Reconsidering Precedential Value of Supreme Court Plurality Decisions,* 42 *Duke L.J.* 419 (1992) (analyzing and criticizing the *Marks* doctrine). On that basis the *holding* of *Perini* may be taken to be that on the facts of that case the arbitration award had not been procured by undue means—not, one would think, a powerful statement of law on which to rely as conclusive precedent.

Much as I would prefer to announce that my change of position is attributable to some epiphany, to some deeply moving event that produced a sudden startling cerebral awakening, to some

lightning bolt of cognitive awareness and intellectual enrichment, the plain truth of the matter is that I have thought more about it and have changed my mind. My awakening, however belated, puts me squarely in the Chief Justice's camp. For whatever ambivalence that progression demonstrates I refuse to commit myself to the psychiatrist's couch, content instead to resurrect—as apparently I must every couple of decades—that reassuring old turkey, "The matter does not appear to me now as it appears to have appeared to me then." Bramwell, B., in *Andrews v. Styrap,* 26 L.T.R. (n.s.) 704, 706 (Ex.1872), *quoted in Moraca v. Ford Motor Co.,* 66 *N.J.* 454, 466, 332 *A.*2d 599 (1975) (Clifford, J., dissenting).

STEIN, J., dissenting.

Acknowledging that resolution of this appeal does not depend on the standard by which courts should review errors of law in private-contract arbitration awards, *ante* at 359, 640 *A.*2d at 793, the Court nevertheless overrules *Perini Corp. v. Greate Bay Hotel & Casino, Inc.,* 129 *N.J.* 479, 610 *A.*2d 364 (1992), and "adopts as a rule governing judicial review of private-contract arbitration awards the standard set forth in the Chief Justice's concurring opinion in [*Perini* ]." *Ante* at 352, 640 *A.*2d at 789. Although the difference between the standard now adopted by the majority and the standard adhered to by the plurality in *Perini* is of enormous importance to parties contemplating the use of private-contract arbitration, the distinction is entirely irrelevant to the only issue that divides the Court in this case: whether we should confirm or remand for clarification an arbitration award that appears to have disregarded or overlooked an item of "retainage" in the amount of $201,148.

The source of law that authorizes modification of arbitration awards to correct miscalculations or mistakes is statutory, not judicial. *N.J.S.A.* 2A:24–9 provides:

The court shall modify or correct the award in any of the following cases:
a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;

b.   Where the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted; and

c.   Where the award is imperfect in a matter of form not affecting the merits of the controversy.

The court shall modify and correct the award, to effect the intent thereof and promote justice between the parties.

Thus, the critical inquiry before us turns on the meaning of the award and requires an essentially factual determination whether "there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property" in the award itself. The standard of review of arbitration awards advocated by the plurality in *Perini*, as well as that advanced in the Chief Justice's concurrence, are simply beside the point.

I

Other than its resolution of the issue of the arbitrator's treatment of the retainage item, I agree with the majority's conclusion that what the Appellate Division identified as flaws and omissions in the award do not constitute a basis adequate to justify disturbance of the award. For example, the Appellate Division noted that the arbitrator made no award with respect to various claims by the contractor for delay damages and interest. 262 *N.J.Super.* at 50–51, 619 *A.*2d 1037. In addition, the Appellate Division concluded that the arbitrator's award to the owner was excessive in respect of a concrete loading dock and was inconsistent with the contract in respect of awards for replacement of glass and repair of cables. *Id.* at 51, 619 *A.*2d 1037. The Appellate Division concluded that the defects in the award it had identified were " 'gross, unmistakable, undebatable, or in manifest disregard of the applicable law and leading to an unjust result.' " *Id.* at 52, 619 *A.*2d 1037 (quoting *Perini, supra,* 129 *N.J.* at 496, 610 *A.*2d 364). The majority concludes that, notwithstanding the defects identified by the Appellate Division, "no statutory ground exists for invalidating or modifying the award." *Ante* at 358, 640 *A.*2d at 793. Except for the retainage item, I concur with the majority's disposition.

That the arbitrator may have decided to ignore certain claims or decided others in a manner different from the way a court would have resolved them ordinarily does not justify invalidating an award. That conclusion is consistent with both the *Perini* plurality opinion, 129 *N.J.* at 494–97, 610 *A.*2d 364, as well as the Chief Justice's concurring opinion in *Perini. Id.* at 548–49, 610 *A.*2d 364.

The retainage item, however, has nothing to do with errors of law on the part of the arbitrator. The arbitrator's award was divided into two sections. The first summarized the claims of Fitzpatrick & Associates, Inc. (Fitzpatrick), the contractor. The second summarized the claims of Tretina Printing Corporation (Tretina), the owner. Under the heading "Fitzpatrick Claims," the arbitrator had designated "Retainage" as the fourth numbered category of claims. The contract authorized the owner to retain an amount equal to 150% of the cost of completion of unfinished items; as each unfinished item was completed, the owner was to pay the related amount of retainage to the contractor. Fitzpatrick claimed that the retainage withheld was $201,148, a figure disputed by Tretina but characterized as an "uncontested fact" by the Chancery Division.

Under the heading "Retainage" in the arbitration award, the arbitrator inserted the following language and amounts, constituting a portion of the funds credited to Fitzpatrick:

> "Construction management fee    $100,000.00
> (interest at 10% for 33 months)    27,500.00
>
> TOTAL   $127,500.00"

In determining to modify the award, the Chancery Division noted that the arbitrator's inclusion of an award for part of the construction-management fee under the heading "Retainage" is a *non sequitur.* The contract provided in Article 7 for a Construction Manager's Fee of $200,000, a provision separate from the retainage provision in Article 11. The arbitrator's award of $100,000, plus interest, as a construction manager's fee under the

heading of "Retainage" affords no explanation for the arbitrator's apparent mistake in failing to account for the retainage either under that heading or elsewhere in the award. As the Chancery Judge observed:

It is unclear how the arbitrator handled the item of retainage. During the course of Fitzpatrick's work some $201,148 had been retained by Tretina in accordance with the terms of the contract. These were monies held out of payments authorized as a reserve to cover any deficiencies which later turned up regarding that approved work. Had the contract been satisfactorily completed, Fitzpatrick would have been entitled to the retainage—in whole or in part. However, the monies have always been, and are today, held by Tretina. The arbitrator in making his net award of $260,267.66 in favor of Tretina either overlooked or assumed that the parties would recognize the offset that Fitzpatrick was entitled to for the retainage. It is clear as one reads the award that the retainage did not enter into his computation. Under his disposition of the Fitzpatrick claims the arbitrator lists as #4 "Retainage" but then proceeds to discuss the construction management fee (an entirely different matter) under that heading. Retainage was not a separate *claim.* It was a liquidated fund to be turned over to Fitzpatrick in whole or in part only if it did not breach its contract and only to the extent that approved work did not require repair or redoing. Tretina prevailed on its claim of breach by Fitzpatrick. The arbitrator liquidated all of its damage claims (save the ones involving the sewer pipe, sprinklers, clip meters and loading dock clearance). The retainage then must be treated as a credit on the amount due, since Tretina has never paid over that money. I will modify the arbitrator's award in that regard as I am permitted to do. *N.J.S.A.* 2A:24–9(c).

Following the Chancery Division's modification of the award to credit Fitzpatrick with the omitted amount of retainage, Tretina sought reconsideration of that determination, relying on its attorney's certification to support its contention that a remand to the arbitrator was the appropriate and authorized mechanism for resolving any ambiguity in the award. Noting that the Chancery Court had characterized as "unclear" the arbitrator's handling of the retainage, the certification of Tretina's attorney states:

If this be so, then the matter should have been remanded to the arbitrator for a clarification as to how, if at all, he handled the issue of retainage. At the oral argument * * * the [c]ourt indicated it was inclined to send the parties back to the arbitrator for just that purpose. Both parties agreed that, if the [c]ourt thought the award to be ambiguous, they would not object to such a procedure.

* * * I believe it is unlikely that Klausner overlooked that figure in his award. Rather, it is just as likely, if not more probable, that the arbitrator combined the

construction management fee being withheld with the retainage and made a lump-sum adjusted award for the two items of $100,000.  * * *

[ ] Tretina believes the only way to know fully what the arbitrator intended, specifically if he took the retainage into account and how, is to ask him.  Therefore, Tretina is concurrently preparing a subpoena which will be served on the arbitrator * * * commanding Mr. Klausner's presence at court for oral testimony only for the limited purpose of ascertaining what he did with the retainage claim.  Note that Tretina is not requesting the arbitrator to re-evaluate the award, or even to inquire into the merits, but simply tell us what he did in forming the award on the issue raised by Judge McGann.

* * * If the arbitrator['s] testimony reveals that he did include the retainage in the award, the court could then withdraw and modify its decision in line with his true intent.  On the other hand, if he testifies [that] he did overlook the retainage claim, then the [c]ourt's decision is absolutely correct and Tretina must live with the result.

[ ] *At this time, however, the arbitrator's true intent and what he considered in making the award is unknown.*  Until his true intention is known, Tretina has been deprived of the vast majority of its award based upon this [c]ourt's own sense of what is a proper award herein.  * * * If the modification truly reflects the arbitrator's intent or it is clear that the arbitrator overlooked a portion of the claim, the [c]ourt's action is both proper and necessary.  *However, to the extent there is an ambiguity in the award, this [c]ourt should not substitute its own judgment for that of the arbitrator.  It will only be upon the arbitrator's sworn testimony that this determination can be made.*  Otherwise, the [c]ourt's decision is based only upon speculation.

[Emphasis added.]

The principle is well-settled that the power of courts to modify arbitration awards to correct evident mistakes includes the power to remand to the arbitrator in order to obtain clarification of the award.  In *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569 (1967), the Third Circuit addressed the inherent power of federal courts to remand an arbitration award to the arbitrator to clarify its meaning, under circumstances strikingly similar to those before us.  Noonan, a general contractor, had demanded arbitration concerning the amount due it in respect of a contract to construct a shopping center.  The arbitrators rendered an award in favor of Noonan for $30,861.64.  Shortly thereafter La Vale filed suit to recover the difference between the amount of the award and the sum of $56,429.66 that it had paid to Noonan while the arbitration was pending.  Noonan asserted that that payment was overdue

and had been taken into account by the arbitration award. The district court remanded the matter to the arbitrator to clarify whether the arbitrator had taken into account the payment made by La Vale while the arbitration was pending. In affirming the District Court's order, the Third Circuit explained that the remand did not have the effect of reopening the arbitration:

Where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify. The resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he has already decided, for there is no opportunity for redetermination on the merits of what has already been decided. Instead, the clarification of an ambiguity closely resembles the correction of a mistake apparent on the face of the award and the determination of an issue which the arbitrators had failed to decide. Thus, in the present case the arbitrators will act only to remove the cloud of doubt as to whether they considered the payment of $56,429.66 in making their award and will in no way reopen the merits of the controversy.

[*Id.* at 573.]

Other courts similarly have recognized the appropriateness of a remand to the arbitrators in order to clarify an apparent ambiguity in the award. See, *e.g., Local 719, American Bakery & Confectionery Workers v. National Biscuit Co.,* 378 *F.*2d 918, 926 (3d Cir.1967); *Hanford Atomic Metal Trades Council v. General Electric Co.,* 353 *F.*2d 302, 307–08 (9th Cir.1966); *United Steelworkers v. Timken Roller Bearing Co.,* 324 *F.*2d 738, 741 (6th Cir.1963); *United Steelworkers v. Interpace Corp.,* 447 *F.Supp.* 387, 391 (W.D.Pa.1978); *Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers,* 242 *F.Supp.* 606, 611 (D.N.J.1965); *Transport Workers Union v. Philadelphia Transportation Co.,* 228 *F.Supp.* 423, 426 (E.D.Pa.1964); *Jersey City Police Officers Benevolent Ass'n v. Jersey City,* 257 *N.J.Super.* 6, 11, 607 *A.*2d 1314 (App.Div.1992). In explaining the relationship between the purposes of arbitration and the desirability of remanding to clarify ambiguous awards, the Ninth Circuit in *Hanford, supra,* observed:

We share the view of the district court that the opinion required clarification and interpretation. We also share the view of the district court that this was a task to be first performed by the arbitration committee and not the court, and that the

court properly remanded the matter to the arbitration committee for such clarification and interpretation. It is appellant's position that once the arbitrators have acted, it is the duty of the court to interpret and enforce the award, rather than to send the matter back to the arbitrators, to the end that the further delay involved in sending the matter back can be avoided. We think, however, that all of the foregoing cases accept the philosophy that where the parties have elected to submit their disputes to arbitration, they should be completely resolved by arbitration, rather than only partially resolved. In some cases the carrying out of this philosophy will require remanding the matter to the arbitrators, and we think that this is such a case.

[353 *F*.2d at 307–08 (citations omitted).]

I perceive no inconsistency at all between the deferential standard for sustaining arbitration awards today adopted by the Court, *ante* at 359, 640 *A*.2d at 793, and the settled and accepted practice of resubmission of ambiguous awards to arbitrators for clarification. To the contrary, the Legislature's specific requirement that in case of "an evident miscalculation of figures or an evident mistake in the description of a person, thing or property * * * [t]he court shall modify and correct the award, to effect the intent thereof," *N.J.S.A.* 2A:24–9, reflects the Legislature's intention that mistaken or ambiguous arbitration awards should not be rubber-stamped by a reviewing court. Because an ambiguous award, such as the one before us, can be clarified by the simple and pragmatic expedient of resubmission to the arbitrator for that singular purpose, the majority's insistence on confirming the award in its present form is unsettling. We need not elevate our interest in the finality of arbitration awards over a court's ability to "promote justice between the parties," *ibid.*, particularly where, as here, the objectives are compatible.

## II

As noted, I consider this case to be an entirely inappropriate occasion to revisit the holding in *Perini*. Because that view obviously has not prevailed, I hasten to adopt the majority's view that no purpose would be served in revisiting the underlying arguments that divided the Court in *Perini*: "Nor need we rehash the extensive treatment that the pertinent authorities were given in the contesting opinions in *Perini*, for we cannot improve on the

arguments included therein." *Ante* at 359, 640 *A*.2d at 793. Nevertheless, I adhere to the views expressed in the *Perini* plurality opinion concerning the appropriate standard for judicial review of arbitration awards, 129 *N.J.* at 494–97, 610 *A*.2d 364, as well as with the view I expressed in *Perini* that "[t]he reliability of arbitration as an alternative method of dispute resolution mandates judicial intervention in extreme cases * * * in which a settled legal principle and industry practice have been repudiated by the arbitrators' award." *Id.* at 556, 610 *A*.2d 364 (Stein, J., concurring in part and dissenting in part).

Justice HANDLER and Justice O'HERN join in this opinion.

CLIFFORD, J., concurring in the result.

*For affirmance*—Justices HANDLER, O'HERN and STEIN—3.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK and GARIBALDI—4.