**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3687-17T2

ALEX N. CHEREPAKHOV,

    Plaintiff-Respondent,

v.

DONNA CHEREPAKHOV,
n/k/a DONNA SILVERMAN,

    Defendant-Appellant.

_____

Argued January 15, 2019 – Decided May 13, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-19-0168-03.

Cara A. Parmigiani argued the cause for appellant.

Mariann C. Murphy argued the cause for respondent (Laemers Murphy & Neggia, LLC, attorneys; Peter J. Laemers and Mariann C. Murphy, on the brief).

PER CURIAM

Defendant Donna Cherepakhov, now known as Donna Silverman, appeals from the Family Part's April 13, 2018 denial of her motion to vacate an arbitrator's award that resolved defendant's and plaintiff Alex N. Cherepakhov's disputes about post-judgment issues arising from their 2003 divorce. Defendant contends that the trial court erred by refusing to vacate the award based upon (1) the arbitrator's inordinate eight-year delay in issuing her decision; (2) the award being arbitrary and capricious because it was unsupported by the facts and based upon incorrect legal conclusions; (3) the award being contrary to the parties' children's best interest; and (4) the award failing to comport with the parties' property settlement agreement (PSA), or with interim administrative orders issued in the arbitration.

We have considered defendant's arguments in light of the record and applicable legal principles. We affirm substantially for the reasons stated by Judge Michael C. Gaus in his written decision issued with the April 13, 2018 order denying defendant's motion.

The salient facts are undisputed. The parties were married in 1992 and had two children: one daughter born in 1996 and another in 1999. They were divorced on February 26, 2003 pursuant to a Judgment of Divorce (JOD) that incorporated their PSA.

A-3687-17T2

The PSA required plaintiff to pay support in the amount of $7500 per month for ten years beginning in 2002, with "half of this amount or $3,750.00 [being] allocated solely as alimony . . . ." Plaintiff agreed that he would not modify his support obligation during the ten year period "unless his gross income for any year falls below $375,000.00."

The PSA imposed a child support obligation on plaintiff that required him to pay $570.00 per month, per child while a child was away at college and "$1,500.00 per month, per child for those complete months that the child returns to [defendant] while on break from college." In addition, plaintiff was "solely and exclusively responsible for all of the college education expenses incurred for the children." The PSA obligated the parties to support their children until emancipation, which it defined as, among other events, the latter of a "child being graduated from high school and reaching the age of eighteen (18) years or the completion of four (4) continuous academic years of college education or other post-high school education . . . ."

Addressing the distribution of the parties' assets, the PSA included provisions relating to their home in Sparta and a condominium in Point Pleasant that they owned jointly. As to the Sparta home, the parties agreed that plaintiff could use it as collateral for a home equity line of credit (HELOC) and that defendant could

construct a swimming pool there using funds loaned to her by plaintiff, which were to be repaid upon the sale of the Sparta home.

As to the condominium, the parties agreed that plaintiff would own the unit, but that it would eventually be transferred to the children unencumbered by any liens. During the interim period, the parties would rent the unit to others and the net income would be paid to defendant until title was transferred to the children. After the transfer, the net income would be used for the children's college expenses.

After their divorce and years of substantial post-judgment litigation, on November 9, 2009, the parties and their attorneys[1] signed a consent order reflecting their agreement to participate in binding arbitration to resolve the parties' issues. Those issues focused upon an application made by plaintiff to reduce his support based upon an alleged reduction in income as contemplated by the PSA.

In the consent order, the parties gave the arbitrator authority to "grant any remedy or relief that [she] deems just and equitable . . . ." The only exception related to custody, as the parties agreed that the arbitrator would not have any authority to change custody. They designated a specific attorney as the arbitrator and agreed that

_____

[1] Although the parties were represented by counsel at the time the order was entered, at various points throughout their litigation and arbitration, one or both of the parties was not represented by counsel.

not only would the arbitrator's award be binding and conclusive, but that they could not appeal from the award to the Superior Court, with the exception that a party could seek to vacate the award as provided under N.J.S.A. 2A:24-8.[2]

Notably, the parties' consent order authorized the arbitrator to seek relief from the court if a party did not cooperate. Specifically, the consent order stated if a "party refuse[d] or neglect[ed] to follow the directions of the arbitrator or to furnish the arbitrator with any papers or information demanded, the arbitrator [was] empowered . . . to proceed ex parte and if necessary to return to court for the authority to subpoena . . . witnesses or documents."

The parties first met with the arbitrator in December 2010, after which they were to engage in discovery and make submissions to the arbitrator. While the arbitration was pending and the parties exchanged discovery, the arbitrator was

---

[2]  Although the order referred to N.J.S.A. 2A:24-8, part of an Act that addresses arbitration of collective bargaining agreements, the parties agree that the applicable statute was actually N.J.S.A. 2A:23B-3, a section of New Jersey's Arbitration Act, which is applicable to all other agreements to arbitrate. See Fawzy v. Fawzy, 199 N.J. 456, 465 n.1 (2009) ("All agreements to arbitrate made on or after January 1, 2005, are governed by N.J.S.A. 2A:23B-1 to -32, except for collective bargaining agreements. N.J.S.A. 2A:23B-3(c). N.J.S.A. 2A:24-1 to -11 now governs only the arbitration of collective bargaining agreements"). See also Manger v. Manger, 417 N.J. Super. 370, 375 (App. Div. 2010) ("Both parties apparently agree that the Arbitration Act governs review of the arbitration award because they fashioned their arguments with specific reference to the Arbitration Act").

called upon to resolve several interim disputes. Between April 2010 and August 2011, the arbitrator entered six administrative orders. The final interim order provided that title to the condominium would be transferred from plaintiff to defendant, who would manage the property in trust for the children's benefit. The order also affirmed plaintiff's support obligation in the PSA: a total of $7500 per month, with $3750 as alimony and $3750 as child support. Plaintiff's obligation would be reduced by $1875 per month for as long as one of the daughters remained in his temporary custody. The order also addressed plaintiff's failures to meet discovery demands and provide the arbitrator with documentation of his financial circumstances to support his request for a modification of support.

In 2012, defendant filed a motion with the Family Part seeking to enforce various provisions of the arbitrator's administrative orders dealing with support issues and to vacate others that addressed custody and parenting time disputes. On September 28, 2012, the motion judge filed an order granting the motion to vacate because, as to parenting time and custody issues, the arbitrator exceeded the scope of her authority because the parties' agreement to arbitrate expressly excluded from arbitration any issues related to a change in custody. All of the other issues were referred back to the arbitrator. While the arbitration was pending, neither the parties

nor the arbitrator sought any further assistance from the court relating to the arbitration or any delay in a final award being made.

The arbitration hearings began on April 12, 2013. At that day's proceedings, the arbitrator noted that she had met with the parties several times and that there had been no resolution despite their good-faith efforts. Additional hearings were conducted through January 25, 2014, the last day that the arbitrator considered testimony. On that day, the arbitrator stated that "[t]here [we]re documents that need[ed] to be obtained" from defendant. They included documentary support for medical expenses and an accounting for rent defendant collected from the condominium. However, many of those documents were never provided even though the parties continued to supply others to the arbitrator.

During the ensuing months, defendant sought on numerous occasions to obtain a final award, estimating that she contacted the arbitrator approximately 618 times. Emails between defendant and the arbitrator reveal that the parties' failure to supply needed information contributed to the delay. In one email, the arbitrator stated that "delays were caused by both [defendant] and [plaintiff] over the course of time ranging from not providing discovery to changing positions to not being available for a variety of reasons" and that "documents [we]re missing or [we]re incomplete and don't tell the story [the parties] each suggest they do." In a

subsequent email, the arbitrator noted the "many delays, hiatuses, [and] discovery detours" and stated that "[defendant] and [plaintiff] both opted not to have attorneys, to not follow through with discovery, to raise new twists and turns, to fail to provide adequate proofs and to essentially dump a convoluted mess in [her] lap." In 2017, the arbitrator responded to demands for a final award and stated that the parties "both kn[e]w that [she] was provided with limited and very convoluted proofs and it ha[d] been a nightmare to sort it all out." The arbitrator also stated in a July 2017 email that she had not been paid for her services by either plaintiff or defendant in two years. In addition to the problem of obtaining information or payment from the parties, the arbitrator suffered personal hardships during the pendency of the matter that also contributed to the delay.

The arbitrator issued her final "Arbitration Order" on November 1, 2017. In the order, the arbitrator continued to express her concern that she was not provided with sufficient information. For example, she stated that because the parties "have provided insufficient evidence to adequately and accurately address the [HELOC] against [defendant]'s home in Sparta, New Jersey on a separate and distinct level . . . that issue [was] folded into the global consideration of all aspects of this case . . . ." Because it was unclear how much of the balance of the HELOC was related to the original cost of the pool, interest, or funds taken out by either party, it could not be

determined which party should be responsible for which portion of the outstanding balance. The arbitrator suggested that the parties be guided by the direction in the remainder of the agreement.

The arbitrator also explained that defendant had not "fully accounted for the rental income and expenses relative to" the condominium through evidence and plaintiff had not transferred title to the children or to a trust for their benefit, as he was ordered to do numerous times. The arbitrator ordered that the condominium was to be immediately appraised, after which defendant would have the right of first refusal to purchase it. If she chose not to purchase it, it would immediately be listed for sale and sold for the highest price obtainable, and the proceeds would be used first to satisfy the HELOC associated with the Sparta property. Any remaining funds would be applied to the children's undergraduate college expenses.

Regarding plaintiff's support obligation, the arbitrator found that he had proven that his income declined for the years 2009 and 2010, but no other years were evaluated and there was no sufficient basis to make adjustments relative to other years. The order also indicated that defendant had failed to provide any documentation regarding other reimbursements she sought from plaintiff, such as the children's dental expenses and extracurricular activities, and as such, they were denied. Finally, the order stated that any of the parties' younger child's college

expenses not covered by the sale of the condominium would be shared equally between the parties.

Before the parties received a copy of the final Arbitration Order, on October 20, 2017, defendant filed a motion to compel the arbitrator to render her decision. She also sought an order requiring that plaintiff pay alimony and child support arrears; repay the HELOC on the Sparta property; transfer the condominium to a trust for the children's benefit; and pay counsel fees. After the parties received copies of the final Arbitration Order in December 2017, defendant withdrew her motion.

Plaintiff filed a motion to confirm the final arbitration award and seeking counsel fees and costs. Defendant filed a cross-motion to set aside the final arbitration award and enforce previous orders entered in the arbitration.[3]

In support of her cross-motion, defendant submitted a certification stating that she never agreed to arbitration; that by December 2010, the arbitrator had all of the information necessary to render a decision and never requested additional information; and that she had paid $10,000 for the arbitrator's services. Defendant

_____

[3] The parties did not provide a copy of this cross-motion in their appendices. We glean from the ensuing order denying defendant's applications that her motion sought an order directing plaintiff to pay alimony and child support arrears; the children's tuition expenses; the balance owed on the HELOC; and the cost of the pool. Defendant also sought relief relating to the condominium.

further stated that upon receiving the Arbitration Order on December 8, 2017, she noticed that plaintiff had already signed it and concluded that he "had an opportunity to read and review the document before [she] even received it." Defendant contended that the decision resulted in a windfall to plaintiff; that the sale of the condominium could not cover the HELOC and the children's college expenses; and that she was "stunned" to learn that the arbitrator was lacking documents because she had never requested any. Defendant asserted that the decision "radically differ[ed]" from the parties' PSA and the August 2011 administrative order, rendering it "pattenly unfair" (sic).

On April 13, 2018, Judge Gaus entered an order granting plaintiff's motion to confirm the Arbitration Order and denying plaintiff's motion for counsel fees and all of the relief sought by defendant, including her motion to vacate the Arbitration Order. In his accompanying Statement of Reasons, the judge explained that defendant failed to prove that the Arbitration Order should be vacated for any of the reasons stated in N.J.S.A. 2A:23B-23(a)[4] or because its implementation resulted in

---

[4] N.J.S.A. 2A:23B-23 states in pertinent part the following:

> a. Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

any harm to the children that would warrant vacating the Arbitration Order under Fawzy, 199 N.J. at 478-79. The judge denied plaintiff's motion for counsel fees because he failed to submit an affidavit of services as required by Rule 5:3-5(c) and Rule 5:3-5(d), and denied defendant's motion for additional monetary relief because the parties agreed that their financial issues would be decided in arbitration. The

(1) the award was procured by corruption, fraud, or other undue means;

(2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;

(4) an arbitrator exceeded the arbitrator's powers;

(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or

(6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of this act so as to substantially prejudice the rights of a party to the arbitration proceeding.

12

judge also found defendant's assertion that she did not agree to arbitrate but was "ordered" to attend arbitration "simply not true."

Turning to the "extraordinary" amount of time between the commencement of arbitration and the final order, the judge found that it was due to defendant's failure to provide documents, fund expenses for a joint expert, and pay arbitration fees. The judge pointed to the arbitrator's numerous emails to the parties requesting documentation and found defendant's assertion that she was "'stunned'" to learn that the arbitrator was lacking documents to be "meritless."

Judge Gaus also found that the arbitrator's decision reflected the lack of information with which she was supplied, and explained that there was "no valid or even persuasive justification provided by defendant for failing to supply sufficient proofs, while simultaneously demanding that the arbitrator render a final decision . . . ." The judge held that the arbitrator did not exceed her powers. Finally, the judge found defendant's allegation that plaintiff received a copy of the final decision before she did to be without merit, and concluded that no circumstances existed to warrant overturning the arbitration agreement or vacating the final award. This appeal followed.

On appeal, defendant avers that it was error for Judge Gaus to not set aside the Arbitration Order. She asserts that overall, the Arbitration Order "results in a

substantial windfall to [plaintiff] in that it does not require him to pay back alimony, child support, or educational expenses, and it does not adequately address the division of the parties' real estate, and fails to include direction to [plaintiff] to pay for" the HELOC. She also contends that the arbitrator's decision regarding child support, college expenses, and graduate school expenses caused the children harm "to the extent that they would not receive the monies owed to them for their support as set forth in the parties' PSA and prior [o]rders."

A court's review of an arbitration award is necessarily "narrow" so that the benefits of arbitration as an "effective, expedient, and fair" means of dispute resolution are preserved. Fawzy, 199 N.J. at 470. Because a trial court's decision to affirm or vacate an arbitration award is a decision of law, our review is de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013); see also Manger, 417 N.J. Super. at 376.

We conclude from our review that defendant's arguments on appeal are without merit. We affirm substantially for the reasons expressed by Judge Gaus in his cogent written decision. We only add the following comments.

Judge Gaus correctly applied N.J.S.A. 2A:23B-23 and Fawzy in determining whether defendant proved she was entitled to any relief. Defendant's contentions about the arbitrator's decision being arbitrary and capricious or failing to comport

14

with the parties' PSA or pendente lite administrative orders are not cognizable bases to set aside the award in the absence of an agreement to expand the scope of judicial review to encompass the claimed errors. See Fawzy, 199 N.J. at 482 n.5 ("parties may agree to a broader review than provided for by the default provisions in the Arbitration Act [if] the agreement . . . accurately reflect[s] the circumstances under which a party may challenge the award and the level of review agreed upon") (citation omitted); see also Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358 (1994). Moreover, we too discern no harm to the now adult children in accordance with the parties' agreement. See Fawzy, 199 N.J. at 479 ("Mere disagreement with the arbitrator's decision obviously will not satisfy the harm standard. The threat of harm is a significantly higher burden than a best-interests analysis"). We also reject defendant's unsupported contention that she established that the delay in the arbitration being finalized caused her to suffer any prejudice. Accordingly, we agree with Judge Gaus that defendant failed to meet her burden to establish cause for vacating the Arbitration Order. See Minkowitz, 433 N.J. Super. at 136; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3.3 on R. 4:5-4 (2019).

Having said that, we would be remiss if we did not comment on the unacceptable delay in completing the arbitration. It is beyond cavil that "[t]he goal

of arbitration is to bring the parties' issues to a final resolution, 'in a speedy, inexpensive, expeditious, and perhaps less formal manner' than full-blown litigation in court culminating in a lengthy trial." Curran v. Curran, 453 N.J. Super. 315, 321 (App. Div. 2018) (quoting Minkowitz, 433 N.J. Super. at 132). Certainly, we understand that an arbitrator's or attorney's or a party's personal hardship can cause an unavoidable obstacle to achieving the goals of an arbitration. However, where parties to a court-ordered arbitration do not comply with an arbitrator's directive to produce information necessary to a quick resolution, the remedy is not to wait for years hoping they shall comply. Rather, a party or an arbitrator should seek judicial intervention on an expedited basis to assist in securing the needed information, especially where, as here, the parties' agreement incorporated a provision authorizing the arbitrator to seek court assistance even on an ex parte basis.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3687-17T2