SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**<u>Laurence J. Rappaport v. Kenneth Pasternak</u> (A-32-23) (088645)**

**Argued November 4, 2024 -- Decided April 1, 2025**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a contested arbitration award was properly modified under N.J.S.A. 2A:23B-24(a)(2).

This appeal arises from a dispute among members of several limited liability companies that was arbitrated pursuant to the parties' agreement. In a series of awards, the arbitrator ruled on numerous claims and counterclaims. He awarded $4.9 million to plaintiff Laurence Rappaport on various claims, offset by an award on a claim asserted by defendant Kenneth Pasternak, for a net award of approximately $3.8 million. The arbitrator did not award Rappaport damages for the loss of future distributions of carried interest.

Following the arbitrator's awards, Rappaport contended that the question of carried interest had not been presented to the arbitrator, and that the arbitrator had improperly ruled that he was not entitled to such distributions. After remanding for clarification that the arbitrator intended his awards to resolve the issue of carried interest, the Chancery Division confirmed the awards.

Rappaport appealed, and the Appellate Division affirmed the arbitrator's awards for Rappaport's claims for lost income and future income based on his termination as a manager. However, the Appellate Division ruled that the parties had "specifically excluded" the question of carried interest from the arbitration, and that "Rappaport's interest as an investor was not a claim raised in arbitration." Based on its reading of the record, the appellate court concluded that the arbitrator had sua sponte raised the question of carried interest in the arbitration. It rejected as "implausible" the arbitrator's valuation of Rappaport's aggregate claim at $4.9 million and ruled that Rappaport was entitled to carried interest going forward under the operating agreements. It modified the awards "to exclude any inclusion of Rappaport's membership interest, including any future carried interest accruing after the conclusion of arbitration testimony" and reversed the judgment of the Chancery Division. The Court granted certification. 257 N.J. 24 (2024).

1

**HELD:** The Court disagrees with the Appellate Division's conclusion that it was the arbitrator, not the parties, who introduced the question of carried interest in the arbitration. The remedy of modification under N.J.S.A. 2A:23B-24(a)(2) is not warranted in this case, and the Appellate Division's review of the award did not conform to the deferential standard governing judicial review of arbitration awards.

1. The New Jersey Arbitration Act (NJAA) authorizes an arbitrator to "order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding." N.J.S.A. 2A:23B-21(c). The statute expressly states that "[t]he fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award . . . or for vacating an award." Ibid. The NJAA lists six circumstances under which a "court shall vacate an award." Id. at -23(a)(1) to (6). It also lists three reasons for which a "court shall modify or correct the award," including, as relevant here, that "the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted." Id. at -24(a)(2). (pp. 23-25)

2. Case law underscores the strict constraints on appellate review in a private arbitration. That standard derives from Chief Justice Wilentz's concurring opinion in Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479 (1992). In Perini, Chief Justice Wilentz expressed the view that "[a]rbitration awards should be what they were always intended to be: final, not subject to judicial review absent fraud, corruption, or similar wrongdoing on the part of the arbitrators. . . . Whether the arbitrators commit errors of law or errors of fact should be totally irrelevant. The only questions are: were the arbitrators honest, and did they stay within the bounds of the arbitration agreement?" Id. at 519 (Wilentz, C.J., concurring). Stating that the NJAA "pronounces the correct rule," Chief Justice Wilentz proposed a new standard: "Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. It can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A. 2A:23B-24]." Id. at 548-49. Two years later, a majority of the Court adopted Chief Justice Wilentz's proposed test. Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358-59 (1994). The limited scope of appellate review promotes the objectives of arbitration. (pp. 25-29)

3. Here, there is no dispute that the issue of carried interest was arbitrable. And upon review of the record, the Court finds no evidence in the record that the parties excluded the question of carried interest from the arbitration. The question of Rappaport's rights under the operating agreements going forward -- including his right to future compensation -- was squarely presented to the arbitrator at the pleading stage by both sides. Rappaport's pre-hearing motion in limine clearly placed in issue his future compensation, including his right to future carried interest.

2

During Rappaport's direct examination before the arbitrator, Rappaport testified about the $25 million estimated value of his carried interest. That point was reiterated in his closing argument. The question of carried interest was raised again in the parties' post-hearing written submissions. Accordingly, Rappaport's right to carried interest -- an arbitrable issue under the parties' arbitration agreement -- was vigorously disputed by the parties at several stages of the arbitration. The Court respectfully disagrees with the Appellate Division's conclusion that when the arbitrator declined Rappaport's request for carried interest, he ruled on a claim not presented to him. (pp. 30-33)

4. Moreover, the Appellate Division's remedy fundamentally affected the merits of the arbitrator's decision on other claims indisputably presented to him. The award of $4.9 million reflected the arbitrator's assessment of the carried interest claim, as well as claims for other categories of damages. The Court therefore does not view the Appellate Division's decision to meet the standard for modification set forth in N.J.S.A. 2A:23B-24(a)(2). That standard has two mandatory components: that the award includes "a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted." (emphasis added). Here, neither factor was met and each independently warrants reversal of the Appellate Division's judgment. As to the Appellate Division's determination that it was "implausible" that the $4.9 million award encompassed the value of Rappaport's future carried interest, the Court reiterates that an appellate court's task is not to determine "[w]hether the arbitrators commit errors of law or errors of fact," but to decide two questions that the statute prescribes: "were the arbitrators honest, and did they stay within the bounds of the arbitration agreement?" Perini, 129 N.J. at 519 (Wilentz, C.J., concurring). Here, the answer to both questions is yes. (pp. 34-35)

5. The Court suggests that when parties intend to exclude from an arbitration one or more issues that fall within the scope of the arbitration agreement, they should identify those issues in writing for the arbitrator and all counsel prior to the arbitration proceeding. (p. 35)

**REVERSED. The Chancery Division's judgment is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

3

Laurence J. Rappaport, individually
and as a member of Rapad Real Estate
Management, LLC, KABR Management,
LLC, KABR Management II, LLC,
KABR Management III, LLC,
and KABR Management IV, LLC,

Plaintiff-Respondent,

v.

Kenneth Pasternak, individually
and as a member of Rapad Real Estate
Management, LLC, KABR Management,
LLC, KABR Management II, LLC,
KABR Management III, LLC,
KABR Management IV, LLC, and
Adam Altman, individually and as a
member of Rapad Real Estate
Management, LLC, KABR Management,
LLC, KABR Management II, LLC,
KABR Management III, LLC,
and KABR Management IV, LLC,
Michael Goldstein, individually
and as a member of
KABR Management III, LLC, and
KABR Management IV, LLC,
Jude Mason, individually and
as a member of KABR Management, III,
LLC, and KABR Management IV, LLC,
Raffi Aynilian, individually and
as a member of KABR Management IV,
LLC, The Sara Pasternak 2008 Irrevocable
Trust, as a member of KABR Management,

LLC, KABR Management II, LLC,
and KABR Management III, LLC,
The Rachael Pasternak 2008
Irrevocable Trust, as a member
of KABR Management, LLC,
KABR Management II, LLC, and
KABR Management III, LLC,
and The Daniel Pasternak 2008
Irrevocable Trust, as a member
of KABR Management, LLC,
KABR Management II, LLC,
KABR Management III, LLC, and
KABR Management IV, LLC, and
The KABR Group, LLC,

Defendants-Appellants.

_____

Laurence J. Rappaport,
individually and as a member of
KABR Management, LLC, and
KABR Management II, LLC,

Plaintiff-Respondent,

v.

Kenneth Pasternak,
individually and as a
member and manager of KABR
Management, LLC,
and KABR Management II, LLC,
Adam Altman, individually and as
a member and manager of
KABR Management, LLC, and
KABR Management II, LLC,
The Sara Pasternak 2008
Irrevocable Trust, as a member
and manager of KABR Management,

2

LLC, and KABR Management II,
LLC, The Rachael Pasternak 2008
Irrevocable Trust, as a member and
manager of KABR Management, LLC,
and KABR Management II, LLC, and
The Daniel Pasternak 2008 Irrevocable
Trust, as a member and manager of
KABR Management, LLC, and
KABR Management II, LLC,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 4, 2024 | April 1, 2025 |

Howard W. Schub argued the cause for appellants
(Nelson Mullins Riley & Scarborough, and Shapiro,
Croland, Reiser, Apfel & Di Iorio, attorneys; Howard W.
Schub and Stuart Reiser, on the briefs).

Christopher Nucifora argued the cause for respondent
(Kaufman Dolowich, attorneys; Christopher Nucifora,
Erik E. Sardiña, and Edward P. Abbott, on the briefs).

Alex R. Daniel argued the cause for amicus curiae New
Jersey Civil Justice Institute (The New Jersey Civil
Justice Institute, attorneys; Anthony M. Anastasio, of
counsel, and Alex R. Daniel, of counsel and on the brief).

Robert E. Margulies submitted a brief on behalf of
amicus curiae Committee for Dispute Resolution
(Schumann Hanlon Margulies, attorneys; Robert E.
Margulies, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

When it enacted the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, the Legislature mandated that a court confirm a private sector arbitration award unless that court modifies, corrects, or vacates the award in accordance with the statute. N.J.S.A. 2A:23B-22. The NJAA identifies three circumstances in which a court may modify an arbitration award, one of which applies when "the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted." Id. at -24(a). Absent a finding that one of the three statutory grounds is present, a court may not modify a private sector arbitration award. Id. at -22.

The Legislature's constraints on appellate review of arbitration awards parallel our case law, which authorizes an order vacating a private sector arbitration award "only for fraud, corruption, or similar wrongdoing on the part of the arbitrators," and permits modification of an award only when the court finds the arbitrator has made one of the "very specifically defined mistakes" identified in the NJAA. Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358 (1994) (quoting Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548-49 (1992) (Wilentz, C.J., concurring)). Judicial review of private sector arbitration awards is thus strictly limited. See id. at 357.

4

This appeal arises from a dispute among members of several limited liability companies that was arbitrated pursuant to the parties' agreement. In a series of awards, the arbitrator ruled on numerous claims and counterclaims. He awarded $4.9 million to plaintiff Laurence Rappaport on various claims, offset by an award on a claim asserted by a defendant for a net award of approximately $3.8 million. The arbitrator did not award Rappaport damages for the loss of future distributions of carried interest.

Following the arbitrator's awards, Rappaport contended that the question of carried interest had not been presented to the arbitrator, and that the arbitrator had improperly ruled that he was not entitled to such distributions. After remanding for clarification that the arbitrator intended his awards to resolve the issue of carried interest, the Chancery Division confirmed the awards.

Rappaport appealed. The Appellate Division viewed the record to demonstrate that the arbitrator, not the parties, had raised the issue of carried interest in the arbitration. It therefore modified the award pursuant to N.J.S.A. 2A:23B-24(a)(2). The appellate court reversed the Chancery Division's judgment, and reinstated Rappaport's complaint seeking a declaration that he was entitled to future distributions of carried interest.

We granted defendants' petition for certification, and now reverse the Appellate Division's judgment. It is undisputed that Rappaport's claimed right to carried interest was an arbitrable issue under the parties' agreement; the issue is whether the parties raised that issue before the arbitrator. We disagree with the Appellate Division's conclusion that it was the arbitrator, not the parties, who introduced the question of carried interest in the arbitration. Rappaport discussed the issue of carried interest in his direct examination, his legal briefs, and the arbitration award he proposed to the arbitrator. At several stages of the arbitration, defendants disputed Rappaport's claim to carried interest and argued that he was not entitled to future distributions. We do not view the remedy of modification under N.J.S.A. 2A:23B-24(a)(2) to be warranted in this case, and we do not consider the Appellate Division's review of the arbitration award to conform to the deferential standard governing judicial review of arbitration awards.

Accordingly, we reverse the Appellate Division's judgment and reinstate the Chancery Division's decision confirming the arbitration award.

## I.

We summarize the portions of the factual record and the procedural history that are directly relevant to the question before us: whether the

6

arbitrator decided a matter that was not submitted for arbitration when he determined whether Rappaport was entitled to carried interest.

## A.

This appeal concerns five limited liability companies collectively known as the KABR entities.[1]  Prior to the dispute that gave rise to this appeal, Rappaport was a managing member of the KABR entities and held various managerial titles in those entities.

The members of each KABR entity entered into an operating agreement which set forth their rights and obligations.  Each operating agreement contained an arbitration provision stating in part that "[a]ny question, dispute, claim, controversy, refusal to perform, or other issue of any nature whatsoever" that "arises in connection with this Agreement shall be finally resolved solely and exclusively" as provided in New Jersey or Delaware Alternative Procedure for Dispute Resolution statutes, "in lieu of all judicial, administrative, and other remedies of any nature whatsoever."

As a managing member, Rappaport was compensated by distributions from management and development fees paid to the companies and

---

[1]  Four of the KABR entities at issue -- KABR Management, LLC; KABR Management II, LLC; KABR Management III, LLC; and KABR Management IV, LLC -- are real estate investment funds.  The fifth, Rapad Real Estate Management, LLC, provides services to the real estate investment funds.

distributions from investment fees paid to the investment funds, and his law firm was paid for legal services that he provided to the companies.

One form of compensation paid to members of the KABR entities was carried interest, sometimes called "promote interest" in the testimony before the arbitrator. Rappaport defined carried interest as "[t]he share of any profits produced by a partnership's investment, paid to the general partner as compensation for managing the investment," so that "[t]he general partner's interest in the property is 'carried' with the property until it is liquidated." As defendant Adam Altman explained to the arbitrator, carried interest "is the interest that [KABR entity members] get after the investors have been paid back a hundred percent of their money and their preferred return."

In 2019, each KABR entity, through resolutions adopted by members of the entity holding two thirds of the interest in that entity, removed Rappaport from his managerial positions. In the arbitration, defendants asserted that the members of the KABR entities took that action as the result of various acts of mismanagement and misconduct by Rappaport. Rappaport denied defendants' allegations and contended that he was removed from his managerial positions without cause. He asserted that in the wake of his removal as a manager of the KABR entities, he was no longer paid management fees, but he continued to

8

receive distributions of carried interest pending the resolution of the parties' dispute.

### B.

### 1.

Rappaport, individually and as a member of the KABR entities, filed an action in the Chancery Division, naming as defendants the members of the KABR entities. Rappaport asserted claims for declaratory relief "to protect Rappaport's rights and to compel [defendants] to permit Rappaport's continued performance" under the KABR entities' operating agreements; minority member oppression under the Revised Uniform Limited Liability Company Act (RULLCA), N.J.S.A. 42:2C-1 to -94, seeking "a remedy other than dissolution" under N.J.S.A. 42:2C-48(a)(5) and (b); and various contract and tort claims. He sought remedies including "[m]onetary damages in an amount to be determined at trial," interest, attorneys' fees, costs and "[s]uch other and further relief as the Court deems just and proper."

Consistent with the operating agreements' arbitration provisions, the parties agreed to dismiss the complaint without prejudice and "submit the claims in this matter as well as any other claims that could be asserted in this matter to arbitration." In an arbitration agreement, they memorialized their intention to "fully and finally resolve their dispute related to the Claim and

Counterclaim," as well as "related matters, including but not limited to, any claims that could be asserted by any Party as part of the Claim or the Counterclaim or with respect to the dissolution or disassociation of Rappaport from, or Rappaport's employment with" the KABR entities, by "submitting their claims and defenses to arbitration."  The parties further agreed that

> [t]he scope of the arbitration shall be confined to adjudicating the Claim, Counterclaim, and related matters, including but not limited to, Rappaport's request for injunctive relief pursuant to his Order to Show Cause for Preliminary Injunction Pursuant to Rule 4:52 (the "Injunction Motion"), any claims that could be asserted by any Party as part of the Claim or the Counterclaim or with respect to the dissolution or disassociation of Rappaport from, or Rappaport's employment with, the KABR Management Companies.
>
> . . . .
>
> The Arbitrator shall have no power to materially alter or materially modify the terms and conditions of this Agreement in any manner that materially prejudices the rights of either Party.  The Arbitrator shall decide what constitutes a material modification.  The Arbitrator shall conduct the hearings in this arbitration, including, but not limited to, the introduction of documents and testimony of the Parties and the non-party witnesses, and shall provide the Parties with a written and reasoned decision, which shall constitute the arbitration award, which shall be final and binding upon the Parties, except as provided in the [NJAA].

The parties designated the Honorable James R. Zazzali (Ret.) as the sole arbitrator. They agreed that the arbitrator would apply the substantive laws of New Jersey and that the arbitration would be "governed procedurally" by the NJAA and the Commercial Arbitration Rules and Procedures for Large, Complex Commercial Disputes of the American Arbitration Association (AAA Rules). AAA Rule 47(a) authorized the arbitrator to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."

The parties filed claims in arbitration. Rappaport restated the claims he had asserted in the Chancery Division, including his claim for declaratory relief, and added claims for age discrimination and indemnification. He sought relief including "monetary damages in an amount to be determined at trial." Defendants countered that Rappaport was terminated for cause as a manager because he had acted improperly and mismanaged the KABR entities. They sought, among other remedies, "a declaration that Rappaport has properly been or may be terminated from all of the KABR [e]ntities and is not entitled to any further compensation," and argued that Rappaport should only be entitled to a redemption payment, not future profits from the entities.

The arbitrator conducted hearings over fourteen days. He considered the testimony of witnesses, written evidence, certifications, and briefs addressing numerous issues contested by the parties.

Among other claims, Rappaport contended that whether or not he were to continue as a manager, he was entitled to receive future compensation as a member of the KABR entities. In a pre-hearing motion, Rappaport argued that "[r]egardless of whether they manage the KABR [e]ntities, any member is entitled to 'receive the profits, los[s]es and distributions from the [KABR entities] that he would have received as a member.'" In his opening statement, Rappaport's counsel urged the arbitrator to allow Rappaport "immediately back in the company to discharge his duties as a member and a manager," among other relief, and to award damages "including backpay [and] distributions of the operating income."

In his opening statement, defendants' counsel characterized the matter as "a business divorce" between "partners who just don't want to be partners anymore," and asked that Rappaport's remedies be limited to a return of his capital and amounts addressed in the operating agreements.

During Rappaport's direct examination on the first day of testimony before the arbitrator, his counsel asked him whether a particular section of one

of the operating agreements set forth a schedule relating to carried interest, and Rappaport answered that it did. Rappaport's direct examination continued:

> Q.  With respect to this litigation -- or, rather, this arbitration, are you asserting any claims with respect to your carried interest?
>
> A.  I'm asserting the fact that I am entitled to that and I am fully vested in the carried interest.

Evidently referring to a portion of defendants' counsel's opening statement addressing Rappaport's claims for damages in the arbitration, Rappaport's counsel inquired:

> Q.  Do you remember [defendants' counsel] going through some numbers about the damages that you assert in this case? Do you recall him speaking today about that?
>
> A.  Yes.
>
> Q.  Do any of those numbers address your carried interest?
>
> A.  No, they do not address the carried interest.
>
> Q.  And what do you estimate your carried interest to be?
>
> A.  Last time that it was valued, which was I think 2018, the total carried interest was somewhere in the $25 million neighborhood. I'm not a hundred percent sure. There is a document that I had at one time that Mike Dwyer at KABR worked up for me for my financial statement.

Q. Okay. And that $25 million estimated number, that's above and beyond the numbers that [defendants' counsel] was discussing earlier?

A. Yes. That was discussing only the management -- the various management companies in reference to the management-style income, not the carried interest.

In his redirect examination, Rappaport was asked whether carried interest was encompassed in the "profits and losses" of the KABR entities, and he testified that it was.

In his closing argument, Rappaport's counsel enumerated the categories of damages that Rappaport claimed. He then stated,

and also, your Honor, what -- there's two things that have to happen, that Mr. Rappaport is clearly entitled to. His carried interest, again, and if he were to be deprived of that, that's nearly 20 or more million dollars. And that's going to be paid out in the future as a right, and as the other partners will have as well, and that's clearly delineated.

In his post-hearing brief, Rappaport claimed $44,335,510 in compensatory damages, consisting of the value of his ownership interest in the KABR entities, and lost income; punitive damages; and attorneys' fees. Citing his own testimony about the value of his carried interest, Rappaport argued that the $44,335,510 figure "does not include any ownership interest for, or the

14

value of, any carried interest to which Rappaport is entitled as a member of the KABR [e]ntities, should he fail to continue as a member."

The proposed arbitration award that Rappaport submitted to the arbitrator included two proposed findings that Rappaport was entitled to carried interest. In one proposed arbitration award, Rappaport urged the arbitrator to grant his motions in limine; to hold that he had a vested interest in the KABR entities' "present and future profits, losses, and distributions"; and to rule that he was entitled to "the 'carried interest,' 'promote' and 'promote interest' (synonymous terms by the parties), which is paid by one of [the KABR investment funds] to the corresponding [KABR entities] in the proportional amount outlined in the . . . corresponding operating agreement for that particular [KABR entity]." In a second proposed arbitration award, Rappaport requested that the arbitrator declare that he was "entitled to receive the profits, losses, and distributions of the [KABR entities] going forward at the percentages outlined in the [KABR entities'] Operating Agreements."

In their post-hearing brief and proposed arbitration awards, defendants asserted that Rappaport was entitled to nothing more than the value of his capital accounts, and that the arbitrator should not award him carried interest or other categories of damages.

After the parties' post-hearing submissions, the arbitrator issued a first interim award. He noted that Rappaport sought $69 million in damages and defendants sought $11 million in damages. Among other determinations, the arbitrator ruled that the operating agreements were enforceable, defendants lacked cause for terminating Rappaport as a manager, and defendants had breached the implied covenant of good faith and fair dealing. The arbitrator declined to reinstate Rappaport as a manager, however, determining that he should not serve in any position in a KABR entity going forward due to the "toxic" atmosphere in the KABR entities while he remained there. Among other rulings, the arbitrator denied Rappaport's claims for declaratory relief, which had included a claim for a declaration that Rappaport was entitled to future compensation under the operating agreements. The arbitrator stated that in the exercise of his discretion, he denied "the requested $25M in carried interest."

The arbitrator awarded $4.9 million to Rappaport, representing, among other categories of damages, "the claimed interest of $13,000 and 'lost income' of $83,000." The arbitrator awarded $1,048,853 to defendant Kenneth Pasternak on Pasternak's claim against Rappaport and calculated the net award to be $3,851,147. Finding that amount to represent "a just result,"

16

the arbitrator urged the parties "to put these events behind them and continue on with their professional and personal lives."

Defendants sought modification, clarification, and correction of the interim award, raising issues that are not the subject of this appeal. Rappaport sought modification of the award. He argued that RULLCA barred New Jersey courts from depriving him of the economic value of his interest as an owner of the limited liability companies and that his right to carried interest was unaffected by his termination, which the arbitrator had deemed to be a termination without cause. Rappaport contended that the arbitrator's decision that he was not entitled to carried interest exceeded the parameters of his authority and that the award should be modified. He stated that he was "not looking for a number amount to be placed on the carried interest at this point," but "simply seeking to clarify" that the arbitrator's interim award entitled him "to his proportional share of the carried interest when it becomes due in accordance with the Court's prior ruling and the 'enforceable' Operating Agreements."

In a second interim award, the arbitrator rejected Rappaport's claim that he had acted beyond the scope of the arbitration in ruling on the question of carried interest. The arbitrator confirmed that he had considered and denied Rappaport's "request for $25M in carried interest," instead awarding "$13,455,

17

the total value of his capital account in KABR I through IV." He stated that even if he "had awarded carried interest, the amount would be de minimis." The arbitrator later issued a third award, addressing a question that is not the subject of this appeal. In accordance with the three awards, defendants paid Rappaport $3,851,147, subject to Rappaport's reservation of rights. The arbitrator then issued a fourth award requiring defendants to pay $190,000 in interest, and defendants paid Rappaport that amount as well.

2.

Rappaport filed a second complaint in the Chancery Division, seeking, among other remedies, a declaration that he was entitled to carried interest going forward because the arbitrator did not state or hold that he was "not a member or [wa]s dissociated as a member." Defendants moved to confirm the arbitration awards, contending that Rappaport was not entitled to further compensation from the KABR entities, and cross-moved to dismiss Rappaport's second complaint. Rappaport then moved to confirm or in the alternative to vacate and modify in part the arbitration award, challenging the arbitrator's denial of carried interest.

The Chancery Division judge remanded the matter to the arbitrator to clarify "whether the $4.9 million award in damages was intended to represent full, just, and complete compensation to [Rappaport] for his damages against

[d]efendants both as a manager and member of the KABR [e]ntities." The arbitrator held a hearing on remand and answered the Chancery Division judge's question in the affirmative. The arbitrator noted that he had stated in his final award that "the damages amount was a 'fair and just result'" and had admonished the parties to put their dispute behind them.

Following the remand, the Chancery Division judge found that the arbitrator had considered the question of carried interest in the arbitration awards. The judge entered an order confirming the arbitration awards. In his order, the judge found that Rappaport's interests in the KABR entities, "including any claimed rights to any past or future profits, carried interest, losses or other distributions of any kind or nature whatsoever with respect to" those entities "have been fully redeemed and cancelled by virtue of the payments made by [d]efendants to [Rappaport] in accordance with the Arbitration Awards." The Chancery Division judge dismissed with prejudice Rappaport's second complaint.

3.

Rappaport appealed the Chancery Division's orders in separate appeals, and the Appellate Division consolidated the appeals.

The Appellate Division affirmed the arbitrator's awards for Rappaport's claims for lost income and future income based on his termination as a

19

manager. Citing defendants' observation that Rappaport's removal as a manager had nothing to do with his status as an equity owner, the Appellate Division ruled that the parties had "specifically excluded" the question of carried interest from the arbitration, and that "Rappaport's interest as an investor was not a claim raised in arbitration."

As all parties have acknowledged during the proceedings before this Court, the Appellate Division mistakenly attributed to the arbitrator the questions about carried interest that were actually posed by Rappaport's counsel to Rappaport during his direct examination on the arbitration's first day. Based on its reading of the record, the appellate court concluded that the arbitrator had sua sponte raised the question of carried interest in the arbitration. It viewed Rappaport's $25 million estimate of the value of his carried interest to be an attempt to "respond to the arbitrator's question by giving him a ballpark figure." The appellate court ruled that no party had presented testimony regarding Rappaport's equity interest in the KABR entities.

The Appellate Division viewed defendants' contention during the arbitration that Rappaport was not entitled to carried interest to lack support in the operating agreements or case law. The appellate court acknowledged that dissociation, as a remedy for minority member oppression under N.J.S.A.

20

42:2C-48(a)(5)(b) and -48(b), was within the scope of the arbitration agreement. It asserted, however, that the arbitrator sua sponte imposed that remedy after testimony concluded, and ruled that Rappaport's claim for carried interest based on his membership in the KABR entities did not accrue until that stage of the proceeding. It rejected as "implausible" the arbitrator's valuation of Rappaport's aggregate claim at $4.9 million.

The Appellate Division ruled that Rappaport was entitled to carried interest going forward under the operating agreements, and that he did not waive his rights as a member by failing to assert a claim for carried interest at the arbitration. It modified the awards "to exclude any inclusion of Rappaport's membership interest, including any future carried interest accruing after the conclusion of arbitration testimony," reversed the judgment of the Chancery Division, and reinstated Rappaport's second complaint.

4.

We granted defendants' petition for certification. 257 N.J. 24 (2024). We granted the motions of the New Jersey Civil Justice Institute and the Committee for Dispute Resolution to appear as amici curiae.

II.

Defendants contend that the Appellate Division failed to apply the deferential standard of review that Tretina mandates. They argue that the

21

question whether Rappaport was entitled to carried interest was not only within the scope of the arbitration agreement, but was repeatedly raised by the parties at various stages of the arbitration. They assert that the Appellate Division's modification of the award directly affected the merits of the award, and that the appellate court therefore misapplied N.J.S.A. 2A:23B-24(a)(2).

Rappaport asserts that the Appellate Division properly scrutinized the arbitrator's decision and correctly concluded that the issue of carried interest was beyond the scope of the arbitration. He contends that he had no notice that his right to carried interest was at risk in the arbitration until late in the arbitration proceeding. Rappaport argues that the Appellate Division's decision did not contravene Tretina because the value of his interest as a KABR member was not an issue raised before the arbitrator.

Amicus curiae New Jersey Civil Justice Institute contends that the Appellate Division misapplied the standard of review. It urges that we apply a presumption that arbitrators act within their authority when the award can be rationally derived from the arbitration agreement or the parties' submissions.

Amicus curiae Committee for Dispute Resolution asserts that the Appellate Division failed to apply a properly deferential standard of review in accordance with N.J.S.A. 2A:23B-23 and -24.

22

III.

A.

The NJAA's primary purpose "is to advance arbitration as a desirable alternative to litigation and to clarify arbitration procedures in light of the developments of the law in this area." S. Judiciary Comm. Statement to S. 514 (Dec. 9, 2002). The statute empowers an arbitrator to "conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding." N.J.S.A. 2A:23B-15(a).

With respect to all remedies except punitive damages and reasonable attorneys' fees and expenses, which are separately addressed in N.J.S.A. 2A:23B-21(a) and (b), the NJAA authorizes an arbitrator to

> order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award pursuant to [N.J.S.A. 2A:23B-22] or for vacating an award pursuant to [N.J.S.A. 2A:23B-23].
>
> [Id. at -21(c).]

Pursuant to N.J.S.A. 2A:23B-22, following an award, a party to the arbitration "may file a summary action with the court for an order confirming the award," thus requiring the court to "issue a confirming order unless the

23

award is modified or corrected pursuant to [N.J.S.A. 2A:23B-20 or -24] or is

vacated pursuant to [N.J.S.A. 2A:23B-23]."  A court shall vacate an award if

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to [N.J.S.A. 2A:23B-15], so as to substantially prejudice the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers;
>
> (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to [N.J.S.A. 2A:23B-15(c)] not later than the beginning of the arbitration hearing; or
>
> (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in [N.J.S.A. 2A:23B-9] so as to substantially prejudice the rights of a party to the arbitration proceeding.
>
> [Id. at -23(a).]

Upon the filing of a summary action pursuant to N.J.S.A. 2A:23B-24(a),

a court shall modify or correct the arbitration award if:

(1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;

(2) the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or

(3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

[Id. at -24(a).]

Our case law underscores the strict constraints on appellate review in a private arbitration such as that at issue here. That standard derives from Chief Justice Wilentz's concurring opinion in Perini.

In Perini, a plurality of the Court upheld an arbitration award, applying a standard of review for private sector arbitrations under which "an arbitrator's determination of a legal issue should be sustained as long as the determination is reasonably debatable." 129 N.J. at 493 (citing Div. of State Police v. State Troopers Fraternal Ass'n, 91 N.J. 464, 469 (1982)).

Chief Justice Wilentz agreed with the plurality's judgment but advocated a substantially more deferential standard of review. Id. at 518-24 (Wilentz, C.J., concurring). He observed that "[i]n New Jersey, instead of ending the dispute, the arbitration award is just the beginning; in this state, arbitration is not an alternative to litigation but rather the first step of the lawsuit." Id. at

25

518. Acknowledging that the plurality had not only followed but refined existing precedents, Chief Justice Wilentz nonetheless stated:

> We need a new rule, one that is true to our arbitration statute. Arbitration awards should be what they were always intended to be: final, not subject to judicial review absent fraud, corruption, or similar wrongdoing on the part of the arbitrators. Parties who choose arbitration should not be put through a litigation wringer. Whether the arbitrators commit errors of law or errors of fact should be totally irrelevant. The only questions are: were the arbitrators honest, and did they stay within the bounds of the arbitration agreement?
>
> [Id. at 519.]

Stating that the NJAA "pronounces the correct rule," Chief Justice Wilentz proposed a new standard:

> Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. It can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A. 2A:23B-24]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award. For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that. I doubt if many will. And if they do, they should abandon arbitration and go directly to the law courts.

26

[Id. at 548-49.]

Two years later, a majority of the Court adopted Chief Justice Wilentz's proposed test. Tretina, 135 N.J. at 358-59. There, the Chancery Division had modified the award, and the Appellate Division, applying the Perini plurality's rule, vacated the award. Id. at 353-54. By the time that the Court decided Tretina, a majority of the justices had abandoned the "reasonably debatable" standard in favor of "the standard set forth in the Chief Justice's opinion concurring in the judgment in Perini"; that standard therefore governed Tretina. Id. at 357-58. "Because the record . . . contain[ed] not even a hint of misconduct by the arbitrator, and because no statutory ground exist[ed] for invalidating or modifying the award," the Court upheld the arbitrator's award in that appeal. Id. at 358.

Accordingly, a private sector arbitration award should not be vacated absent "fraud, corruption, or similar wrongdoing on the part of the arbitrators." Perini, 129 N.J. at 548-49 (Wilentz, C.J., concurring); see also Tretina, 135 N.J. at 358-59; N.J.S.A. 2A:23B-23(a); Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (noting, in the setting of a public sector arbitration, that "[a]n arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis

27

justifies that action." (quoting <u>Kearny PBA Local No. 21 v. Town of Kearny</u>, 81 N.J. 208, 221 (1979))).

In <u>Tretina</u>, the Court noted that the NJAA's modification provision then in effect directed a court "to modify an award only if those changes will not affect the merits of the controversy." 135 N.J. at 360. The Court viewed the statute's "clear implication" to be "that the Legislature intended that courts correct mistakes that are obvious and simple -- errors that can be fixed without a remand and without the services of an experienced arbitrator." <u>Ibid.</u> <u>See</u>, <u>e.g.</u>, <u>Block v. Plosia</u>, 390 N.J. Super. 543, 552-57 (App. Div. 2007) (modifying an arbitration award by undoing the arbitrator's trebling of damages under the New Jersey Consumer Fraud Act given the absence of any claim under that statute). Indeed, Chief Justice Wilentz noted in his concurring opinion in <u>Perini</u> that the modification provision was "extremely limited." <u>Perini</u>, 129 N.J. at 542 (Wilentz, C.J., concurring). He reached "the only tenable conclusion from the statute itself": "errors of fact, whether gross or ordinary, lead to neither vacation nor modification and correction," and that "there is no mention whatsoever of errors of law." <u>Ibid.</u>

Private sector arbitration awards are thus subjected to an extraordinarily deferential standard of review.[2] An award may not be vacated or modified simply because a court disagrees with the arbitrator's interpretation of the law or view of the facts; unless the statute's specific requirements for vacating or modifying an award are met, the award must be confirmed. N.J.S.A. 2A:23B-22.

That limited scope of appellate review promotes the objectives of arbitration. Absent the strict constraints on appeals from arbitration awards, "the purpose of the arbitration contract, which is to provide an effective, expedient, and fair resolution of disputes, would be severely undermined." Fawzy v. Fawzy, 199 N.J. 456, 470 (2009); see also Perini, 129 N.J. at 536-44 (Wilentz, C.J., concurring).

## B.

Applying the standard prescribed by the NJAA and our jurisprudence, we review the Appellate Division's decision.

---

[2] Amicus curiae New Jersey Civil Justice Institute urges that we follow Third Circuit decisions recognizing a presumption that an arbitrator has acted within the scope of the arbitrator's authority when the award can be rationally derived from either the parties' arbitration agreement or submissions. That argument was raised only by amicus, not by a party, and we do not consider it. See C.R. v. M.T., 257 N.J. 126, 152 (2024); State v. J.L.G., 234 N.J. 265, 280 (2018).

Although the Appellate Division discussed N.J.S.A. 2A:23B-23(a)'s standard for a judicial decision vacating an arbitration award, it did not base its decision on that provision. Instead, the appellate court modified the award pursuant to N.J.S.A. 2A:23B-24(a)(2), holding that the arbitrator's ruling on carried interest constituted "an award on a claim not submitted to the arbitrator," and that "the award may be corrected without affecting the merits of the decision upon the claims submitted."

There is no dispute that the issue of carried interest was arbitrable; it clearly fell within the arbitration agreement's broad parameters. Indeed, all counsel confirmed at oral argument before this Court that the carried interest issue was arbitrable under the terms of the parties' arbitration agreement. The question is whether that issue was raised before the arbitrator.

We find no basis in the record for the Appellate Division's statement that "all parties specifically excluded" Rappaport's claim for carried interest from the arbitration. To the extent that the Appellate Division relied on defendants' comment that Rappaport's removal as an officer "has nothing to do with his status as an equity owner," that reliance is misplaced; that observation did not concern the scope of the arbitration, but was offered in support of defendants' contention that Rappaport's claim for minority oppression should fail on the merits under New Jersey and Delaware law. We

find no evidence in the record that the parties excluded the question of carried interest from the arbitration.

To the contrary, from the inception of the arbitration, the parties disputed whether Rappaport was entitled to receive future compensation as a member of the KABR entities. In his claim in arbitration, Rappaport sought a judicial declaration enforcing the operating agreements and entitling him to compensation going forward. In their statement of claims, defendants sought a declaration that Rappaport had no right to further compensation from the KABR entities. Thus, the question of Rappaport's rights under the operating agreements going forward -- including his right to future compensation -- was squarely presented to the arbitrator at the pleading stage.

Rappaport's pre-hearing motion in limine clearly placed in issue his future compensation as a member of the KABR entities, including his right to future carried interest. In that motion, Rappaport asserted his vested right to the entities' profits and losses. As he later confirmed in his redirect examination before the arbitrator, carried interest is encompassed in the "profits and losses" of the KABR entities. He therefore asserted his right to carried interest in the arbitration.

The parties' opening statements emphasized their stark disagreement as to the remedies that the arbitrator should impose. Rappaport asked to be

31

reinstated to discharge his duties as a member and a manager, and he sought damages including backpay and distributions of the KABR entities' operating income. Defendants asked the arbitrator not to reinstate Rappaport and sought to limit any remedy to the return of his capital or amounts provided for in the operating agreements.

During Rappaport's direct examination before the arbitrator the same day, Rappaport testified about the $25 million estimated value of his carried interest. That point was reiterated in Rappaport's closing argument, when his counsel stated that Rappaport's carried interest was worth "nearly 20 or more million dollars."

The question of carried interest was raised again in the parties' post-hearing written submissions. Rappaport asserted in his brief that his $44 million estimate for several categories of damages did not include the $25 million value of his carried interest. His proposed arbitration award expressly reiterated that claim; it included two proposed awards of carried interest to him. In their post-hearing written submissions, defendants opposed Rappaport's carried interest claims, arguing that he was entitled to no compensation other than the value of his capital accounts.

Accordingly, Rappaport's right to carried interest -- an arbitrable issue under the parties' arbitration agreement -- was vigorously disputed by the

parties at several stages of the arbitration. Rappaport asserted that he was fully vested in that interest and had a right to distributions of carried interest under the operating agreements. He asked the arbitrator to declare him to be entitled to future distributions of carried interest. Rappaport maintained that his carried interest was worth an estimated $25 million, an amount distinct from and in addition to other categories of damages. Defendants argued that the arbitrator should grant a "business divorce" that would terminate Rappaport's status as an investor in the KABR entities, that Rappaport had failed to prove his contention that his carried interest was worth $25 million, and that Rappaport should be awarded the value of his capital accounts and nothing more.

The question is not whether Rappaport or defendants offered the more persuasive argument on the question of carried interest; the merits of that issue are not before us. The parties' dispute instead centers on whether Rappaport's right to carried interest as a member of the KABR entities was an issue raised in the proceedings before the arbitrator. The record clearly demonstrates that it was. Accordingly, we respectfully disagree with the Appellate Division's conclusion that when the arbitrator declined Rappaport's request for carried interest, he ruled on a claim not presented to him.

33

Moreover, the Appellate Division's remedy fundamentally affected the merits of the arbitrator's decision on other claims indisputably presented to him. As the arbitrator's second interim award confirmed, the arbitration award of $4.9 million reflected the arbitrator's assessment of the carried interest claim, as well as claims for other categories of damages. And as the arbitrator's awards make clear -- and his advice to the parties to put their dispute behind them confirmed -- the arbitrator intended to grant the "business divorce" that defendants sought and to ensure that Rappaport would no longer participate in the KABR entities. The Appellate Division's decision undid that resolution; it would require the parties to maintain a business relationship the arbitrator deemed "toxic" as long as any KABR entity survives.

We therefore do not view the Appellate Division's decision to meet the standard for modification set forth in N.J.S.A. 2A:23B-24(a)(2). That standard has two mandatory components: that the award includes "a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted." (emphasis added). Here, neither factor was met and each independently warrants reversal of the Appellate Division's judgment.

We briefly address the Appellate Division's conclusion that the arbitrator did not properly recognize Rappaport's interest as a transferee

following dissociation, and its declaration that it is "implausible to argue" that the arbitrator's $4.9 million award encompassed the value of Rappaport's future carried interest. We reiterate that an appellate court's task is not to determine "[w]hether the arbitrators commit errors of law or errors of fact," but to decide two questions that the statute prescribes: "were the arbitrators honest, and did they stay within the bounds of the arbitration agreement?" Perini, 129 N.J. at 519 (Wilentz, C.J., concurring); see also Tretina, 135 N.J. at 358-59; N.J.S.A. 2A:23B-22, -23(a), -24(a). Here, the answer to both questions is yes.

We recognize that the parties have expended substantial time and resources litigating the question whether Rappaport's asserted right to carried interest was presented to the arbitrator. We respectfully suggest that when parties intend to exclude from an arbitration one or more issues that fall within the scope of the arbitration agreement, they should identify those issues in writing for the arbitrator and all counsel prior to the arbitration proceeding.

IV.

We reverse the judgment of the Appellate Division and reinstate the Chancery Division's decision confirming the arbitration awards and dismissing with prejudice Rappaport's second complaint.

CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.